IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

In re:                                       )
                                             )
STEVEN LEE SMITH, JR.,                       )     Case No. 05-21392
                                             )
                Debtor.                      )

## MEMORANDUM OPINION

The issue pending before the Court is whether the proposed Chapter 13 Plan of Steven Lee Smith, Jr. ("Debtor" or "Smith") was filed in good faith pursuant to 11 U.S.C. §1325(a)(3). Debtor filed a voluntary Chapter 13 petition on June 1, 2005. Debtor also filed a Chapter 13 Plan whereby he proposed to pay $50.00 a month for 36 months to Densil Dean Staton ("Creditor" or "Staton"), the only creditor listed in Debtor's bankruptcy schedules. On July 7, 2005 Staton filed an Objection to Confirmation of Plan ("Objection"). The Court convened a hearing on July 21, 2005 and took the matter under advisement. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(L) which this Court may hear and determine. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to these proceedings by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that the Debtor's proposed Chapter 13 Plan was not filed in good faith pursuant to 11 U.S.C. §1325(a)(3). Staton's Objection is therefore sustained and the Debtor will be given twenty (20) days in which to file an amended plan.

## I. FACTUAL BACKGROUND

In October 1998 Debtor broke into Staton's home, stole personal property, including a gun and coin collection, and then intentionally set fire to the house. In April 1999 Debtor plead guilty to three felony crimes including Burglary in the Second Degree, Stealing and Arson in the Second Degree.[1] Debtor was sentenced to 5 years incarceration for each felony charge, sentences to run concurrently. Debtor's sentence was stayed so long as he complied with the terms of his probation for a period of 5 years.[2] On December 6, 1999 the Carroll County Circuit Court Judge determined that Debtor violated the terms of his probation, which resulted in revocation of Debtor's probation and Debtor was ordered to serve the remainder of his sentence.[3] Staton testified that the Debtor made one restitution payment in the amount of $350.

Subsequent to the criminal proceedings against Debtor, Staton filed a civil lawsuit in the Circuit Court of Carroll County, Missouri, alleging that Debtor willfully and maliciously set fire to her home causing destruction of her home and all its contents. Debtor failed to answer or otherwise appear in the civil lawsuit and on April 24, 2003 Staton obtained a judgment against Debtor for actual damages of $121,690 and punitive damages of $10,000 plus interest and costs ("Judgment").[4]   The Judgment was not appealed.

According to Staton's testimony, Debtor has not made any payments to Staton pursuant to the Judgment. On June 1, 2005 Debtor filed a Chapter 13 bankruptcy petition. On his

---

[1] Creditor's Exhibits #1 and #2

[2] Creditor's Exhibit #1 sets forth the terms of Debtor's probation including various costs associated with Debtor's criminal case and a requirement that Debtor pay Creditor restitution in the amount of $16,900.00.

[3] Creditor's Exhibit #1

[4] Creditor's Exhibit #3

bankruptcy schedules, Debtor states he has no interest in any real property and that he has a total of $120 worth of personal property, consisting only of clothing and jewelry, all of which is claimed as exempt. Debtor's schedules indicate that Debtor's only creditor is Staton. The bankruptcy schedules further indicate that Debtor is employed as a house sitter for which he earns a net monthly income of $50. Debtor's monthly income is supplemented by $150 in food stamps. His one and only expense is $150 for food, leaving $50 per month of disposable income.[5] Staton testified that Debtor has no observable mental or physical disabilities which would interfere with his obtaining full-time employment. Staton also testified that Debtor has a high school degree and one year of technical training in an unspecified field. Debtor was not present at the hearing and thus did not provide the Court with any evidence which could supplement the incredibly sparse information included in his bankruptcy schedules or provide some explanation for his employment status.

Debtor's proposed Chapter 13 Plan ("Plan") proposes to pay his only creditor a total of $1,800 over 36 months in full satisfaction of the Judgment.[6] Additionally, the Plan indicates that Debtor will pay his attorney a total of $1,500, $1,000 of which will be paid through the Plan, thus decreasing the total payment to Staton to $800. Staton filed the Objection, arguing that the Plan was not proposed in good faith.

## II. DISCUSSION AND ANALYSIS

### A. Relevant Legal Standard

Staton argues that confirmation of Debtor's Plan should be denied because the Debtor has not met the good faith requirement of 11 U.S.C. § 1325(a)(3) as evidenced by: (a) the fact

---

[5] Creditor's Exhibit #5

[6] Creditor's Exhibit #4

that the one debt included in the Plan resulted from Debtor's pre-petition criminal conduct; (b) Debtor is proposing to pay very little, if any, on his debt to Staton; (c)Debtor's under-employed status despite his ability to be fully employed; and (d) that Debtor's primary purpose in filing a Chapter 13 petition was to avoid paying the debt owed to Staton[7].

The Bankruptcy Code requires a Chapter 13 debtor to propose a Chapter 13 plan in good faith in order for a court to confirm the plan. Section 1325(a) states in pertinent part:

(a) Except as provided in subsection (b), the court shall confirm a plan if...

(3) the plan has been proposed in good faith and not by any means forbidden by law.[8]

The Bankruptcy Code does not provide a definition of "good faith" in the Chapter 13 context, however the Court is not without guidance as most circuits addressing this issue have employed the "totality of the facts and circumstances" approach to discerning whether a Chapter 13 plan was proposed in good faith. *See In re White*, 255 B.R. 737, 742 (Bankr.W.D.Mo.2000).[9] The totality of the circumstances approach guided courts, prior to the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333 (1984) ("1984 Amendments"), when engaging in a § 1325(a)(3) good faith analysis. The Eighth Circuit Court of Appeals in *United States v. Estus* (*In re Estus*), 695 F.2d 311 (8th Cir.1982) outlined eleven, non-exclusive

---

[7] See Objection to Confirmation of Plan

[8] 11 U.S.C. § 1325(a)(3)

[9]*See also, e.g., Handeen v. LeMaire* (*In re LeMaire*), 898 F.2d 1346, 1353 (8th Cir. 1990); *Okoreeh-Baah*, 836 F.2d 1033 (*citing In re Chaffin*, 816 F.2d 1070, 1074 (1987)), *modified on other grounds*, 836 F.2d 215 (5th Cir.1988); *In re Johnson*, 708 F.2d 865, 868 (2nd Cir. 1983); *In re Kitchens*, 702 F.2d 885, 888-89 (11th Cir.1983); *In re Estus*, 695 F.2d 311, 316-17 (8th Cir.1982); *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir.1982); *In re Goeb*, 675 F.2d 1386, 1389-90 (9th Cir.1982); *In re Rimgale*, 669 F.2d 426, 432 (7th Cir.1982).

factors that it considered relevant to a good faith analysis.[10]  Subsequent to the 1984 Amendments, the Court of Appeals considered the effect of new § 1325(b) of the Bankruptcy Code and concluded that most of the economic factors outlined in *Estus* had been subsumed in the "ability to pay" criteria of the new § 1325(b)[11].  *See In re Lancaster*, 280 B.R. 468, 474 (Bankr.W.D.Mo.2002) *citing Education Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir.1987).   Although the *Zellner* Court focused its § 1325(a)(3) analysis on the "ability to pay" factors included in the new legislation[12], it preserved the "totality of the circumstances" approach with respect to analyzing the *Estus* factors not addressed by § 1325(b).  The Court of Appeals in *In re LeMaire*, announced that even in light of the new § 1325(b),  the totality of the circumstances test as enunciated in *Estus* was still the proper standard to apply when analyzing a

---

[10] The Eighth Circuit noted the following factors as relevant in a good faith analysis: (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought releif under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.  *See In re Estus*, 695 F.2d at 317.

[11] 11 U.S.C. § 1325(b)(1) provides: If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan...(B) the plan provides that all of the debtor's disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

[12] The three factors that the *Zellner* Court considered include: (1) whether the debtor has stated his debts and expenses accurately; (2) whether the debtor has made any fraudulent representations to mislead the bankruptcy court; and (3) whether the debtor has unfairly manipulated the Bankruptcy Code.  *See Lancaster*, 280 B.R. at 475 *citing Zellner*, 827 F.2d at 1227.

§ 1325(a)(3) good faith question. *See LeMaire*, 898 F.2d at 1349; *see also e.g., Molitor v. Eidson* (*In re Molitor*), 76 F.3d 218, 220-221 (8th Cir.1996) (Court of Appeals confirmed that the totality of the circumstances analysis adopted by *Estus* remains in place and should be applied when engaging in a Chapter 13 good faith analysis); *Noreen v. Slattengren*, 974 F.2d 75, 76 (8th Cir.1992); *Lancaster*, 280 B.R. at 475 (court applied all eleven *Estus* factors to § 1325(a)(3) good faith analysis). Therefore, this Court will apply the totality of the circumstances analysis as outlined in *Estus* to the Objection.

### B.  Burden of Proof

The Bankruptcy Code does not establish whether the debtor or the party opposing confirmation of the Chapter 13 plan has the burden of proof on the issue of confirmation. Debtor argues that the creditor bears the burden of proof on a § 1325(a)(3) good faith question, and Staton argues that the burden is on the Debtor to prove the Plan was proposed in good faith. There appears to be a split of authority on this issue. A majority of courts, including at least one in this district[13], have held that the debtor has the burden of proving that the conditions for confirmation have been satisfied.[14] The Eighth Circuit has not definitively determined who has the burden of proof on a § 1325(a)(3) good faith question.[15]

---

[13] *See Lancaster*, 280 B.R. at 474 (debtor bears the burden of proof on a § 1325(a)(3) good faith question) *(citing In re Love*, 957 F.2d 1350, 1355 (7th Cir.1992)).

[14] Keith M. Lundin, Chapter 13 Bankruptcy,3D, §217.1 (2000 & Supp. 2004); *see also e.g., Smyrnos v. Padillia* (In re Padilla), 213 B.R. 349, 352 (B.A.P. 9th Cir.1997); *First Nat'l Bank of Boston v. Fantasia (In re Fantasia)*, 211 B.R. 420 (B.A.P. 1st Cir. 1997); *Spokane Ry. Credit Union v. Gonzales (In re Gonzales)*, 172 B.R. 320 (E.D. Wash. 1994); *In re Reese*, 281 B.R. 735 (Bankr.M.D.Fla.2002); *In re Hendricks*, 250 B.R. 415, 420 (Bankr.M.D.Fla.2000).

[15] In holding that the creditor has the burden of proof on a § 1325(b)(1) question, the *Zellner* Court observed that generally in a civil lawsuit it is the litigant that is attempting to change the status quo, or the plaintiff, that bears the burden of proof. *See Zellner*, 827 F.2d at 1226; *see also In re Fries*, 68 B.R. 676, 685 (Bankr.E.D.Pa.1986) (creditor has, at minimum, the

In analyzing the term "burden of proof" the Court observes that there is a difference between the burden of persuasion and the burden of going forward with evidence. Unlike the burden of persuasion, which is a static burden that remains with the party with whom it was first placed, the burden of going forward involves the burden being placed initially on one party who is required to adduce some evidence tending to establish a point, after which the burden then shifts to the opposing party to rebut the evidence presented. *See In re Mendenhall*, 54 B.R. 44, 46 (Bankr.W.D.Ark.1985). Even those cases holding that the creditor has the burden of proof recognize that once the creditor adduces evidence to suggest confirmation standards have not been satisfied, the debtor must then respond. *Id.* at 46-47 (creditor objecting to confirmation has the initial burden of proof and debtor then has the burden to rebut the evidence presented to support the objection) *(citing In re Hines*, 723 F.2d 333, 334 (3rd.Cir.1983)). Although the Court believes the better rule is that the debtor has the ultimate burden of proof on a § 1325(a)(3) confirmation issue, with the initial burden of producing a question regarding compliance with confirmation requirements with the creditor, the issue is not dispositive in this case. Staton came forward with evidence which raised questions regarding whether the Debtor's Plan was filed in good faith, and the Debtor did absolutely nothing to establish either that his Plan was in fact filed in good faith or rebut the evidence suggesting that it was not.

---

initial burden of producing satisfactory evidence to support the contention that the debtor is not applying all of his disposable income to the plan payments). Because § 1325(b)(1), by its own terms, is only invoked by an objection by a trustee or a creditor, it is only logical that the trustee/creditor would bear the initial burden of proof. However, because § 1325(a)(3) involves the question of whether the debtor's plan meets one of the requirements for confirmation, it is equally logical that the debtor would bear the burden of proof or, at a minimum, the burden to rebut evidence which raises a doubt regarding whether the plan was proposed in good faith. *See Mendenhall*, 54 B.R. at 47 (debtor has the burden of rebutting evidence presented by creditor in support of objection to confirmation based on lack of good faith).

### C. Application of *Estus* Factors

Below the Court addresses each of the *Estus* factors and their applicability to the facts of this case.

1.  **The amount of the proposed payments and the amount of the Debtor's surplus**. The Debtor's Plan indicates an intention to pay $50 per month for a period of 36 months, an amount which, according to the Debtor's Schedules, if food stamps are taken out of the equation, represents Debtor's entire monthly income. As if a proposal to pay a total of $1,800, or approximately 1% of the $133,000 debt owed to Staton were not sufficiently indicative of a lack of good faith, Debtor's plan also indicates Debtor's intention to fund $1000 of his attorney's fees through the plan, leaving merely $800, minus the trustee fees, to pay Staton.[16] While it may be all of Debtor's disposable income, it is a truly minimal sum. In addition, as discussed below, there is a genuine question as to whether it is all the income Debtor is capable of generating.

2.  **The Debtor's employment history, ability to earn and likelihood of future increases in income.** Debtor's Schedules indicate that Debtor is employed as a house sitter and that his net monthly income from employment is $50.00. According to Staton's testimony, Debtor has a high school degree, has completed one year of post-secondary education in an unspecified field and has no observable mental or physical disabilities which would impede him from being fully employed. Debtor's counsel intimated that Debtor may be in the process of seeking disability assistance from the state, but without more, the Court can only conclude that Debtor is under-employed (perhaps intentionally so) and has offered no explanation for his inability or unwillingness to obtain more productive employment.

---

[16] *See Lancaster* 280 B.R. at 482 (plan proposing to pay 3% of debt owed to victim of debtor's pre-petition, criminal conduct found inadequate and indicative of lack of good faith).

3.  **The probable or expected duration of the plan**. As previously stated, the Debtor proposes to fund his Chapter 13 plan for 36 months, which incidentally is the minimum time permitted by by the Bankruptcy Code when creditors are not being paid in full.[17] Although the Court cannot require Debtor to fund the plan for a longer period of time, when combined with the minimal amount of the proposed payment, the Court considers Debtor's minimum length proposal lacking in good faith.

4.  **The accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court.** The Schedules are at the very least, unusual. It is difficult to believe the Debtor has no more than $120 in property and has no more in monthly expenses than food. Other than this observation, the only evidence presented by Staton regarding the accuracy of Debtor's Schedules is that the Debtor failed to list his restitution debt of $16,600, which Staton argued survived Debtor's violation of probation and service of his sentence. Debtor's counsel argued that after revocation of Debtor's probation, Debtor was no longer required to make restitution payments. Neither party cites any authority on this issue. In light of the numerous other factors supporting a lack of good faith finding, the Court finds this discrepancy immaterial to its ultimate determination.

5.  **The extent of preferential treatment between classes of creditors**. Debtor only lists one creditor which makes this factor inapposite.

6.  **The extent to which secured claims are modified.** Debtor lists no secured creditors. This factor is likewise inapplicable.

7.  **The Type of debt sought to be discharged and whether any such debt is

---

[17] 11 U.S.C. § 1325(b)(1)

**nondischargeable in Chapter 7.** A vast majority of the evidence presented at the hearing was intended to convince the Court that Debtor's pre-petition behavior was criminal, egregious and reprehensible. Staton testified that Debtor is her relative, that he had been in her home on more than one occasion before the fire, that after the fire, but prior to entering a guilty plea for arson, stealing and burglary, he expressed to her that he could not believe someone would burn her house down. After hearing Staton's evidence and reviewing the exhibits, the Court acknowledges the egregiousness of Debtor's pre-petition conduct; it seems clear that the debt owed to Staton would not be dischargeable in a Chapter 7 pursuant to 11 U.S.C. § 523(a)(6). Debtor's counsel conceded as much at the hearing. While this Court recognizes that a Chapter 13 plan may be confirmed despite egregious, criminal conduct by the debtor when other factors indicate that the plan was filed in a good faith,[18] such is not the case in this instance. In fact, there is not a single factor which would lend support to Debtor's assertion that the Plan was filed in a good faith effort to pay his only creditor, Staton.

8. **The existence of special circumstances such as inordinate medical expenses.** There was no evidence of special circumstances for the Court to consider.

9. **The frequency with which the debtor has sought relief under the Bankruptcy Reform Act.** As far as the Court is aware, this is Debtor's first bankruptcy, making this factor inapplicable.

10. **The motivation and sincerity of the debtor in seeking Chapter 13 relief.** The Eighth Circuit, in *Estus*, held that a Chapter 13 plan is not proposed in good faith if the plan "constitutes an abuse of the provisions, purpose or spirit of Chapter 13." *See Estus*, 695 F.2d at 316. The

---

[18] *See LeMaire*, 898 F.2d at 1352; *see also e.g.*, *Lancaster*, 280 B.R. at 475; *In re Doersam*, 849 F.2d 237, 239 (6th Cir.1988) (while pre-filing conduct not determinative of the good faith issue, it is nevertheless relevant"); *Noreen v. Slattengren,* 974 F.2d at 77.

Court recognizes that many debtors seek Chapter 13 relief in an attempt to pay their creditors as little as possible and yet still propose a plan which is not offensive to the purpose of Chapter 13. In this case, however, where the Plan proposes a stream of minimal payments resulting in satisfaction of less then 1% of a debt which is the result of criminal, pre-petition conduct, which would render it almost certainly non-dischargable in a Chapter 7, and the Schedules suggest the Debtor is under-employed, in addition to several other unanswered oddities, the Debtor's Plan does appear to be contradictory to the spirit of Chapter 13 and a clear indication of an abuse of the provisions, purpose and spirit of the Bankruptcy Code.

11.     **The burden which the plan's administration would place upon the trustee.** If this case were to be confirmed, the burden placed on the trustee would be minimal.

## II.  CONCLUSION AND ORDER

In summary, the Court will not confirm the Debtor's Chapter 13 Plan because the Court finds that the Plan was not filed in good faith pursuant to 11 U.S.C. § 1325(a)(3). "Whenever a debtor seeks a Chapter 13 'superdischarge' of a debt that would be nondischargeable in Chapter 7, and whenever that debtor has engaged in pre-filing conduct that is criminal and/or repugnant to societal standards, the Court will subject any proposed plan to a closer degree of scrutiny than migh otherwise be the case." *Lancaster,* 280 B.R. at 482.  In this case, the Debtor's plan proposes to pay his only creditor, and the victim of his pre-filing criminal conduct, less than 1% of the total debt.  The Debtor's meager proposed payment to his creditor coupled with his apparently under-employed status and questionable Schedules, supports the Court's finding that Debtor's Chapter 13 Plan was not filed in good faith.   For all the reasons cited above, Staton's Objection to Confirmation is sustained.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated:     August 22, 2005              /s/ Dennis R. Dow
                                        THE HONORABLE DENNIS R. DOW
                                        UNITED STATES BANKRUPTCY JUDGE